UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GREGORY WEBBER,                    )
                                  )
            Plaintiff,            )
                                  )
v.                                )         No.:  3:04-CV-73
                                  )              (VARLAN/GUYTON)
AETNA LIFE INSURANCE COMPANY,     )
                                  )
            Defendant.            )

## MEMORANDUM OPINION

Plaintiff Gregory Webber filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., to recover long-term disability benefits from Aetna Life Insurance Company ("Aetna"). The case is before the Court on the plaintiff's Motion for Judgment on the Pleadings [Doc. 19] and the defendant's Motion for Entry of Judgment [Doc. 21]. The plaintiff urges the Court to find that defendant erred in denying him long term disability benefits and to reverse the defendant's administrative decision to that effect. The defendant argues that its decision to deny plaintiff long term disability benefits is supported by the administrative record and should be affirmed. The Court has carefully considered the parties' briefs [Docs. 20, 23, 27, 28, 29, 30], the entire Administrative Record, and the excellent arguments of counsel presented on March 10, 2005.

For the reasons set forth herein, the Court will grant plaintiff's motion for judgment on the pleadings and deny defendant's motion for entry of judgment.

## I.    Relevant Facts

Plaintiff Gregory Webber was previously employed as a Reservation Sales Agent with Cendant Corporation in Knoxville, Tennessee.  This position required plaintiff to respond to inbound customer calls, utilize sales and service techniques and tools to sell and promote Cendant products and services, achieve and maintain performance objectives of quality, productivity, efficiency and teamwork, and maintain knowledge of current reservation policies and procedures to ensure compliance with and adherence to Cendant quality assurance guidelines and established service levels.  (AR at 00166.)[1]  Plaintiff was regularly required to sit, use hands to finger, to handle or feel objects, tools, or controls, to talk or hear. (AR at 00167.)

Plaintiff began working for Cendant on June 19, 2000 and was eligible for benefits under Cendant's Long Term Disability Plan (hereinafter the "Plan")[2] beginning on July 1, 2000.  (AR at 00656.)  Cendant is the Plan Sponsor and Cendant Corporation Employee Benefits Committee is the Plan Administrator.  Defendant Aetna Life Insurance Company ("Aetna"), reviews claims for benefits under the Plan and pays any award of benefits.

The Plan provides LTD benefits for a period of "total disability cased by a disease or accidental bodily injury."  (AR at 00033.)  "Total disability" is defined in the Plan as:

---

[1] The Administrative Record ("AR") filed with the Court consists of 678 pages and will be cited as "AR at ___."

[2] The Plan is contained in the Administrative Record at pages 00001-00054.

2

- During the period which ends right after the first 24 months benefits are payable in a period of total disability:

    You are not able, solely because of injury or disease, to perform the material duties of your own occupation; except that if you start work at a reasonable occupation you will no longer be deemed totally disabled.

- Thereafter during such period of total disability:

    You are not able, solely because of injury or disease, to work at any reasonable occupation.

(AR at 00033.)

The Plan also contains certain exclusions from coverage, including "preexisting conditions." Under the Plan, benefits are not available for a disability that:

- Starts during the first 12 months of your current Long Term Disability Coverage, if it is caused or contributed to by a "preexisting condition." A disease or injury is a preexisting condition if, during the 3 months before the date you last became covered:

    it was diagnosed or treated; or

    you received services for the disease or injury; or

    you took drugs or medicines prescribed or recommended by a physician for that condition.

(AR at 00040.) The record reflects that, prior to his employment with Cendant, plaintiff was diagnosed with HIV (human immunodeficiency virus) and has received ongoing treatment for HIV since at least February 2000. (AR at 00552.) Plaintiff acknowledges that his HIV is a pre-existing condition and does not claim that he is entitled to LTD benefits due to his HIV status.

3

Aetna also relies on the "Active Work Rule," which states:

> If you happen to be ill or injured and away from work on the date your coverage would take effect, the coverage will not take effect until you return to full-time work for one full day.

(AR at 00052.)

Plaintiff suffered an acute asthma attack on April 11, 2001, and did not return to work. (AR at 00087.) Plaintiff contacted Aetna on April 18, 2001, to apply for short term disability benefits. (AR at 00086-87.) Plaintiff advised Aetna that his doctor recommended that he was unable to work due to "HIV" and "severe asthma attack." (AR at 00087.) Plaintiff was initially certified to receive short term disability benefits from April 11 through April 27, 2001. (AR at 00087-00088.) He planned to return to work on April 28, 2001, but he did not do so. (AR at 00088.)

On May 30, 2001, plaintiff again applied for short term disability benefits and identified his condition as "swelling of glands due to HIV." (AR at 00089.) Aetna treated this claim as "successive" to his previous disability claim. It appears that Aetna made numerous attempts to obtain complete information from plaintiff's physician, Dr. Brian Kemp, regarding plaintiff's claim. Aetna received a note from Dr. Kemp dated June 2, 2001, stating that plaintiff "will be continuing on disability for indeterminate periods – continual problems as outlined on previous forms." (AR at 00667.)

On July 5, 2001, Aetna received an Attending Physician Statement ("APS") from Dr. Kemp dated July 2, 2001. (AR at 00665-66.) The APS stated that Dr. Kemp examined plaintiff on June 7, 2001. Dr. Kemp indicated that plaintiff suffered from fatigue, decreased

4

endurance and concentration as a result of HIV. (*Id*.) Dr. Kemp opined that plaintiff might be able to return to work in the future, but he believed that plaintiff would not reach maximum medical improvement for over a year and did not expect plaintiff to return to work "at this point." (AR at 00666.)

Aetna certified plaintiff as eligible for short term disability benefits on July 6, 2001, retroactive to his prior benefit period in April and extending until July 31, 2001. (AR at 00093.) The administrative record reflects that, at the time of this certification, Aetna noted that plaintiff's claim "has potential for ltd" and that "pre-existing would need to be investigated should claim extend into ltd." (AR at 00486.) Thus, because plaintiff claimed he was still unable to work for an undetermined amount of time, Aetna began to review plaintiff's eligibility for LTD benefits. (AR at 00483.)

Upon request, Aetna received an APS form dated August 16, 2001, from Dr. Kemp which also indicated that plaintiff suffered from fatigue, adenopathy, lipodystrophy, parotid gland swelling, neuropathy, and asthma. (AR at 00653-654.) Dr. Kemp indicated that plaintiff could not perform involved tasks that need stamina, concentration, prolonged sitting or standing. (*Id.* at 00654.) Dr. Kemp further advised that plaintiff was not able to work. After receiving the APS from Dr. Kemp, Aetna certified plaintiff to continue receiving short term disability benefits through October 12, 2001. (AR at 00096.)

After repeated requests for information to determine plaintiff's eligibility for LTD benefits, Aetna received plaintiff's response on November 20, 2001. (AR at 00097.) Plaintiff identified the following doctors who had treated him during the past year: Dr. Kemp

(for HIV, its attendant infections and side effects of medications), Dr. Ann Reid (for chronic and acute depression), and Dr. Harold Cates (for his hips, which had been diagnosed with avascular necrosis ("AVN")).[3] (AR at 00147, 00648.) Plaintiff further claimed that he was unable to work due to swollen glands, asthma, and a hip problem that began in July 2001. (AR at 00148, 00649.) Plaintiff also stated that his hip problem "prevents much movement" and he is "worn out by walking due to having to use so much effort to avoid hip pain." (AR at 00148.)

Dr. Kemp provided another APS dated November 30, 2001, which indicated that plaintiff had been diagnosed with AVN. (AR at 00641-642.) Dr. Kemp also stated that plaintiff was unable to work due to severe physical limitations. (*Id.*) Aetna received Dr. Kemp's medical records on December 19, 2001 and sent them to a nurse for review as to whether plaintiff's claim was excluded as a preexisting condition. (AR at 00099.)

On January 2, 2002, Aetna denied plaintiff's claim for LTD benefits due to a preexisting condition exclusion. (AR at 00143-44.) In the denial of benefits letter, Aetna stated that it considered the medical conditions identified by Dr. Kemp that rendered him unable to work as of April 11, 2001. (*Id.*) Although not specified in the letter, Aetna apparently considered plaintiff's HIV to be a disqualifying pre-existing condition. The denial of

---

[3]Plaintiff's initial brief contains the following definition of AVN: "avascular necrosis is the death of bone tissue due to a lack of blood supply to the bone. This can lead to tiny breaks in the bone and eventually collapse of the bone. It most often affects the head of the thighbone (femur), part of the hip joint." [Doc. 20 at p. 9, n.2.]

6

benefits letter is silent as to whether Aetna considered plaintiff's AVN or asthma to be a disabling condition.

On February 27, 2002, plaintiff requested a review of Aetna's decision and specifically did not dispute that his HIV was a pre-existing condition. (AR at 00518.) Plaintiff claimed that he was originally disabled due to the asthma attack that caused him to leave work, and that he later developed the swollen gland condition and AVN, which resulted in a hip replacement operation in January 2002. (*Id*.) Plaintiff claimed that neither the asthma nor the AVN were related to his HIV and asked Aetna to reconsider the denial. (*Id*.) Plaintiff also submitted a February 27, 2002 letter from Dr. Kemp and a February 26, 2002 letter from Dr. Strader in support of his request for review, both of whom advised that his AVN was not related to his HIV. (AR at 00519-20.)

It appears that Aetna then sent plaintiff's file to an internal review panel called "DMA," although the record does not explain who or what constitutes DMA. (AR at 00139-00142, 00474.) DMA reviewed plaintiff's file and recommended that the denial of benefits be overturned. (AR at 00139.)[4] The DMA report notes that the first reference to hip pain appears in Dr. Kemp's records of May 2, 2001. (AR at 00140.) The DMA review also noted that AVN "is a separate and distinct diagnosis not caused or contributed by the Claimant's pre-existing HIV condition." (AR at 00142.)

---

[4]Although the DMA report is not dated, Aetna's records indicate that DMA returned the file on October 22, 2002. (AR at 00474.) Aetna's file notes then state "unsatisfactory review .. refrd for med review .. urgent." (*Id*.)

Aetna then requested its consulting medical director, Dr. Oyebode Taiwo, to conduct a review of plaintiff's medical records to determine three issues: (1) whether the AVN and asthma were preexisting conditions; (2) whether either the AVN or asthma were a result of HIV; and (3) whether the AVN and asthma precluded plaintiff from performing his own occupation. (AR at 00504-506.) It is worth noting that Dr. Taiwo did not examine or treat plaintiff; his opinion was based solely on a review of plaintiff's records. Dr. Taiwo concluded that plaintiff's records showed the asthma was not a preexisting condition and that it was not linked to his HIV. He further concluded that asthma is an "episodic disease with acute attacks interspersed with symptom-free period" and that it "would not have precluded Mr. Webber from performing his own occupation except during acute attacks." (AR at 00506.) In reviewing plaintiff's AVN, Dr. Taiwo determined that plaintiff first complained of hip pain in May 2001, but he was "evaluated and diagnosed with avascular necrosis of both hips in September of 2001, therefore, he was not evaluated, diagnosed or treated for this condition during the preexisting period." (*Id*.) However, Dr. Taiwo concluded that the AVN could be a result of this HIV. Specifically, he opined that "one of the known complications of HIV medication is avascular necrosis of the head of the femur. Mr. Webber was taking these medications and subsequently developed avascular necrosis of his femur as a result of his HIV therapy." (*Id*.) Dr. Taiwo also advised that AVN would have precluded plaintiff from performing his own occupation. (*Id*.)

On October 31, 2002, Aetna issued a second denial of plaintiff's claims for LTD benefits. (AR at 00135-00138.) First, Aetna concluded that plaintiff's HIV was a pre-

existing condition for which he received treatment and medication in the three months prior to his coverage and to the extent he was disabled due to conditions related to HIV, his claims were precluded under the pre-existing condition exception. (AR at 00137.) Second, Aetna determined that plaintiff's asthma was not of sufficient severity for him to be considered disabled. (*Id*.) Third, plaintiff's claim that he was disabled due to AVN was precluded under the Plan's "Active Work Rule" because the condition arose after plaintiff had left work on account of disability. (AR at 00136.) Aetna further stated that even if the "Active Work Rule" did not apply, the AVN would have been excluded as a complication of HIV medication as set forth by Dr. Taiwo. (AR at 00137.)

After the second denial, plaintiff retained counsel who contacted Aetna on January 25, 2003 and requested plaintiff's entire claim file. (AR at 00120-123.) Plaintiff's counsel sent Aetna voluminous exhibits documenting plaintiff's AVN condition on July 17, 2003. (AR at 00182-00459.) These records included Social Security Administration records in which plaintiff was approved for Social Security disability benefits beginning April 11, 2001, as well as treatment records from Ft. Sanders Parkwest Medical Center, Dr. Kemp, Tennessee Orthopedic Clinic (Drs. Kemp, Strader, and Cunningham), Covenant Home Health, and Ft. Sanders Regional Medical Center. The records reveal that plaintiff had a total hip replacement of the right hip on January 7, 2002, and a total hip replacement of the left hip on April 1, 2002. (AR at 00198-99, 00205-207.) Prior to the surgeries, Dr. Cates noted that plaintiff limped at all times, could walk less than two blocks comfortably, and was cane

dependent. (AR at 00241.) The records from Covenant Home Care reveal two lengthy periods of rehabilitation following each hip replacement surgery. (AR at 00257-00409.)

Aetna then sent plaintiff's file to Dr. Amy Hopkins, a consulting disability medical director, for medical review. (AR at 00181.) Like Dr. Taiwo, Dr. Hopkins did not examine or treat plaintiff, but provided her opinion based on a review of his records. Dr. Hopkins reviewed whether plaintiff's AVN was a separate disabling condition. (AR at 00179.) Although she acknowledged that AVN "can be quite painful," Dr. Hopkins determined that plaintiff was "not necessarily ... significantly impaired from sedentary activities, such as those required by his own occupation." (AR at 00181.) She also concluded that there was no evidence that plaintiff's AVN was pre-existing or related to his HIV status. (*Id*.) On September 30, 2003, Aetna again upheld its denial of benefits, concluding that plaintiff was not totally disabled from performing the material duties of his own occupation. (AR at 00179-00180.)

## II.    Standard of Review

This action seeking a review of the denial of plaintiff's benefits is governed by ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides as follows:

> A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to further benefits under the terms of the plan.

10

In *Wilkins v. Baptist Healthcare Systems*, 150 F.3d 609, 617-20 (6th Cir. 1998), the Sixth Circuit established guidelines under which district courts must adjudicate ERISA cases brought before them for judicial review. The Sixth Circuit explained that using summary judgment as a tool for the adjudication of ERISA cases does not properly comport with the purpose of summary judgment. *Id.* at 619. Because the role of a district court in ERISA matters is not to determine whether issues of fact exist for trial, but to review the administrative record before it, district courts should more properly characterize their role in such proceedings as encompassing elements of both bench trials and summary judgments. *Id.* at 619-20. Following these guidelines, the district court proceeds by making adjudications on both fact and law as would occur in a bench trial while handling the matter in an expedited fashion resembling summary judgment. *Id.*

Furthermore, *Wilkins*, following Supreme Court precedent, dictates this Court's standard of review in ERISA matters. Under *Wilkins*, this Court has two possible standards of review. If the trustees of an employee benefits plan do not have discretion to determine eligibility for benefits or to construe the terms of the Plan, this Court is required to undertake a *de novo* review of the administrators' decision. *Id.* at 613. On the other hand, where a benefits plan vests discretion with the administrators, this Court may only disturb the administrators' decision if it finds the basis of such a decision to be arbitrary and capricious. *Id.* at 616 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Significantly, regardless of the standard of review applied to the administrators' decision, "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a

11

consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Admin., Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)).

In this case, the Plan states as follows:

> For the purpose of section 503 of Title I of the Employee Retirement Income Security Act of 1974, as amended (ERISA), Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy. In exercising such fiduciary responsibility, Aetna shall have discretionary authority to:
>
> > determine whether and to what extent employees and beneficiaries are entitled to benefits; and
> >
> > construe any disputed or doubtful terms of this policy.
>
> Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously.

(AR at 00017.) Plaintiff contends that this provision is not a clear grant of discretionary authority by Cendant, the Plan Sponsor. Instead, plaintiff argues that the insurance policy was written and issued by Aetna. Plaintiff argues that the authority to grant discretion and to name someone as a fiduciary under the Plan can only come from the employer/plan sponsor, or from a named fiduciary, who must be named in the Plan document.[5] Plaintiff

---

[5]Plaintiff relies on 29 U.S.C. § 1102(a)(2), which states as follows:
> the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

12

further contends that Aetna is acting under a conflict of interest inasmuch as Aetna both decides the claim and pays the benefits, thus creating a financial incentive to deny claims.

Aetna argues that the above-quoted Plan language is sufficient to grant Aetna discretionary authority, noting that the Sixth Circuit only requires "that a plan contain 'a clear grant of discretion [to the administrator] to determine benefits or interpret the plan.'" *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir.), *cert. denied*, 513 U.S. 1058 (1994)). Aetna argues that it is "common practice" for the only documentation of a plan to be the Plan Sponsor's contract with the insurance company, as in this case. [Doc. 28 at p. 2, n.1.] Aetna further argues that there is no conflict of interest and plaintiff has presented no evidence of such. Aetna points out that as a large corporation its financial interest in any particular award of benefits is "trivial." [Doc. 28 at p. 3.]

Upon careful review of the record, the Court finds that the language in the Plan is sufficient to grant discretion to Aetna as a claims administrator. Although plaintiff makes a strong argument that the Plan documents are simply an insurance policy written by Aetna, the plain language of the Plan indicates that it is a contract between Cendant and Aetna, thus representing an agreement between the parties that Aetna would act as a fiduciary in evaluating claims for purposes of ERISA. Accordingly, the arbitrary and capricious standard of review applies.

Nevertheless, the Court agrees with plaintiff that the conflict of interest in Aetna acting as both claims administrator and payor of benefits should be taken into account in

13

determining the reasonableness of the administrator's decision. Aetna both funds and administers the plan at issue, thus it incurs a direct expense when benefits are granted and it benefits directly from the denial of benefits. *Killian*, 152 F.3d at 521. The Sixth Circuit has repeatedly held that this conflict of interest must be considered in determining whether the decision denying benefits was arbitrary and capricious. *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005); *University Hospitals of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000); *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir. 1989), *cert. denied*, 495 U.S. 905 (1990). Specifically, the conflict of interest is to be considered in applying the arbitrary and capricious standard of review. *Calvert*, 409 F.3d at 293; *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (application of the arbitrary and capricious standard should be shaped by the circumstances of the inherent conflict of interest).

Thus, the issue now before the Court is whether the decision of Aetna to deny plaintiff LTD benefits constitutes an arbitrary and capricious act based upon the administrative record. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002) (quoting *Davis*, 887 F.2d at 693) (internal quotations and citations omitted)).

14

### III.    Analysis

Plaintiff has presented several arguments in support of his position that Aetna's decision to deny him LTD benefits was arbitrary and capricious.  First, plaintiff argues that Aetna ignored or gave insignificant weight to evidence from plaintiff's treating sources that shows he is disabled and that his AVN is not related to his HIV.  Second, plaintiff contends that Aetna's claim handling of his case shows that Aetna continued to seek a way to deny benefits, even though the evidence supported disability according to their own consultants and employees.  Third, plaintiff argues that Aetna arbitrarily denied his claim based on a finding that his AVN was the result of a pre-existing condition when the majority of the medical evidence indicates that AVN is not the result of a pre-existing condition.  Fourth, plaintiff argues that Aetna arbitrarily denied his claim based on the opinion of one physician when the other physicians opined that his AVN was disabling.  Finally, plaintiff argues that it was arbitrary for Aetna to deny his benefits based on a finding that he was not covered by the policy.  [Doc. 20 at p. 11.]

Aetna argues that the decision to deny plaintiff's claim for LTD benefits was not arbitrary or capricious because neither the asthma, AVN, nor any previous conditions complained of qualified plaintiff for benefits under the Plan.  Aetna contends its decision was rationally related to the Plan's language governing the type of conditions that can be considered and whether they met the definition of "totally disabled."  Aetna argues that plaintiff's asthma was not sufficiently severe to render him totally disabled.  Aetna also argues that his claim that he was disabled due to his AVN is precluded by the "Active Work

Rule." Even if Aetna could have considered plaintiff's AVN, Aetna argues that it is related to his HIV and would therefore be excluded as a preexisting condition. Finally, Aetna argues that the medical evidence does not show that AVN rendered plaintiff totally disabled within the terms of the Plan. [Doc. 23.]

Plaintiff's responds that he does not contest the finding that he was not disabled due to his asthma after October 12, 2001. Instead, plaintiff argues that during the time he was found temporarily disabled (for purposes of short term disability benefits), he became permanently disabled due to AVN and this was one continuous period of total disability, thus entitling him to LTD benefits. [Doc. 27 at pp. 2-3.]

Thus, it appears that there are three issues to be resolved: (1) whether Aetna's application of the "Active Work Rule" to exclude plaintiff from being covered by the Plan was arbitrary and capricious; (2) whether Aetna's determination that plaintiff's AVN resulted from a pre-existing condition was arbitrary and capricious; and (3) whether Aetna's determination that plaintiff's AVN was not disabling was arbitrary and capricious.

A.    The "Active Work Rule"

As noted in the recitation of facts, the Plan contains an "Active Work Rule" which states in pertinent part as follows:

> If the employee is ill or injured and away from work on the date any of his or her Employee Coverage (or any increase in such coverage) would become effective, the effective date of coverage (or increase) will be held up until the date he or she goes back to work for one full day.

(AR at 00006.)  The Plan reiterates the "Active Work Rule" in a summary of coverage as follows:

> If you happen to be ill or injured and away from work on the date your coverage would take effect, the coverage will not take effect until you return to full-time work for one full day.  This rule also applies to an increase in your coverage.

(AR at 00049.)  The Plan's summary of coverage also states that an employee's coverage will take effect on the later to occur of:

- your Eligibility Date; and

- the date you return your signed form.

(AR at 00049.)  An employee's "Eligibility Date" is defined as "the Effective Date of this Plan" or "the date you complete a probationary period of 30 days of continuous service for your Employer or, if later, the date you enter the Eligible Class."  (AR at 00049.)  In this case, plaintiff was eligible on January 1, 2001, the Effective Date of the Plan, because he was already employed prior to that date.

Plaintiff argues that the "Active Work Rule" is only applicable to determine which employees will be covered under the LTD policy when the policy first goes into effect or when coverage is first effective for an employee.  Aetna argues that the "Active Work Rule" excludes coverage for a disability that occurs when an employee is out of work.  Because plaintiff initially left work due to his asthma and then developed AVN without returning to work, Aetna contends any condition that arose after April 11, 2001 is excluded from

17

coverage by the "Active Work Rule." Aetna further argues that this application of the rule constitutes a reasonable interpretation of the Plan.

It is undisputed that plaintiff was eligible for benefits under the Plan at the time he first became disabled, on April 11, 2001. Thus, the question is whether the Active Work Rule can subsequently exclude plaintiff from coverage because he developed another disabling condition while away from work. After considering the plain language of the Plan, the Court agrees that Aetna's interpretation and application of the Active Work Rule is not reasonable nor applicable to deny plaintiff's coverage. The Active Work Rule plainly speaks in terms of coverage under the Plan; it does not relate to coverage of a particular disability. The Court finds that Aetna's application of the Active Work Rule to deny plaintiff coverage for AVN was arbitrary and capricious.

      B.      <u>Whether Plaintiff's AVN Resulted From a Pre-existing Condition</u>

Plaintiff contends that it was arbitrary and capricious for Aetna to deny him LTD benefits based on a finding that his AVN was the result of a pre-existing condition, HIV. The October 31, 2002 denial letter stated, "[o]ne of the known complications of HIV medication is avascular necrosis of the head of the femur." (AR at 00137.) As plaintiff noted, only one physician, Dr. Taiwo, concluded that his AVN could be related to the HIV medications: "Mr. Webber was taking these medications and subsequently developed avascular necrosis of his femur as a result of his HIV therapy." (AR at 00506.) It is also noted that Dr. Hopkins, who conducted Aetna's final review of plaintiff's file, concluded that "[t]here was no evidence in this file that EE's AVN was pre-existing nor related to his HIV

status." (AR at 00181.) Plaintiff argues that it was arbitrary and capricious for Aetna to rely on one aspect of Dr. Taiwo's opinion in contravention of the remaining medical evidence.

Aetna argues that it properly concluded that plaintiff's AVN was caused by a pre-existing condition based on Dr. Taiwo's opinion. Aetna also points out that the Plan does not cover disabilities that are caused by or contributed to by a pre-existing condition. Thus, Aetna contends it was appropriate to conclude that plaintiff's AVN was excluded from eligibility for LTD benefits.

The record reflects that two of plaintiff's treating physicians, Dr. Strader and Dr. Kemp, stated that the AVN is not related to plaintiff's HIV. (AR at 00519-520.) The record also reflects that Aetna's DMA review concluded that AVN "is a separate and distinct diagnosis not caused or contributed by the Claimant's pre-existing HIV condition." (AR at 00141-42.) Further, Dr. Hopkins, who performed Aetna's final medical review of plaintiff's file, also concluded that plaintiff's AVN was not pre-existing or related to his HIV. (AR at 00181.) Thus, the record contains four medical opinions that plaintiff's AVN is not related to or caused by his HIV and one opinion that AVN is a complication of HIV treatment. The Court further observes that Aetna did not accept Dr. Taiwo's opinion that plaintiff's AVN was disabling and would have prevented him from performing the duties of his own occupation.

The Court agrees with plaintiff that Aetna's reliance on this aspect of Dr. Taiwo's opinion, in the face of all other medical evidence, was arbitrary and capricious. It is worth noting that Dr. Taiwo was hired by Aetna for the purpose of reviewing plaintiff's file and

19

that he never examined or treated the plaintiff. Although Aetna is not required to give special deference to plaintiff's treating physicians, Aetna also may not arbitrarily rely on one of its own consultants in the face of all other contrary evidence. *See Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002) (insurance company acted arbitrarily in relying on one report from physician instead of entire file); *Williams v. International Paper Co.*, 227 F.3d 706, 713 (6th Cir. 2000) (administrator's decision not to consider all of the medical evidence was arbitrary and capricious). Additionally, in applying the arbitrary and capricious standard to this issue, the Court considers the fact that Aetna has a financial interest in reviewing benefit claims. Accordingly, Aetna's reliance on Dr. Taiwo's conclusion that plaintiff's AVN was a complication of his HIV medications is not reasonable or supported by the weight of the evidence.

C.     <u>Whether Plaintiff's AVN Was Disabling</u>

The third contested basis for Aetna's decision to deny plaintiff LTD benefits was that plaintiff's AVN was not disabling. In the September 30, 2003 final denial letter, Aetna concluded plaintiff was not totally disabled from performing the duties of his own occupation due to his AVN condition. (AR at 00179.) Aetna's decision was based on the medical review by Dr. Hopkins, who concluded that plaintiff "would not necessarily have been significantly impaired from sedentary activities" due to his AVN. (AR at 00181.) Plaintiff argues that Aetna's reliance on this aspect of Dr. Hopkins' opinion was arbitrary and capricious.

The record reflects that Dr. Kemp, the DMA review, and Dr. Taiwo all agreed that plaintiff could not work as a result of his AVN. (AR at 00220-21, 00139-142, 00506.) The record is replete with descriptions of the severity of pain caused by AVN and the significant physical limitations it placed on plaintiff. The condition was of such a degree as to require plaintiff to undergo two total hip replacement surgeries and rehabilitation. Given these facts, it is difficult to conceive how Aetna could reasonably conclude that plaintiff was not "totally disabled" as defined by the Plan. Again, it is unclear why Aetna accepted this aspect of Dr. Hopkins' opinion in the face of the remaining medical evidence, other than perhaps that Dr. Hopkins' opinion provided a basis to continue to deny plaintiff's claim. In light of the entire record, the Court finds that Aetna's conclusion that plaintiff's AVN was not disabling was arbitrary and capricious.

## IV.    Conclusion

For the reasons set forth above, the plaintiff's motion for judgment on the pleadings will be granted, the defendant's motion for entry of judgment will be denied, and judgment will be entered in favor of the plaintiff.

Order accordingly.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE